(34 Misc. Rep. 709.)

PEOPLE ex rel. WILLIAMSON v. SCANNELL, Fire Commissioner.

(Supreme Court, Trial Term, New York County. May, 1901.)

VETERAN FIREMAN—RETIREMENT—VALIDITY.

Consolidation Act, § 519, authorizes the board of fire commissioners, by a unanimous vote, to retire certain members of the department from service. Section 790, c. 378, Laws 1897, provides that such commissioners shall have power to retire or relieve from service at fires certain members of the department, and that "in every case the said fire commissioner is to determine the circumstances thereof." A member of a fire department, an honorably discharged veteran, was retired for alleged defective vision, under an order signed by the fire commissioner two weeks before it was issued, and prepared before a medical examination of the fireman thereafter discharged, and approved on a telephonic communication had by the employés of the commissioner with him at a place distant from the city. The fireman at the time was entitled as first on an eligible list prepared by the civil service commission for promotion within a few days before his retirement. Held, not to show an exercise by the fire commissioner of his judicial discretion in making the retirement, and said retirement was invalid.

Application by the people, on the relation of Lindsay Williamson, for a writ of mandamus against John J. Scannell, fire commissioner. Writ granted.

John W. Weed, for relator.

John Whalen, Corp. Counsel (Charles W. Ridgway, of counsel), for respondent.

CLARKE, J. At the close of the trial of the issues upon an alternative writ of mandamus both sides stipulated that the issues might be withdrawn from the jury, and all questions of fact and law submitted to the court. On the 12th day of May, 1865, the relator was honorably discharged from the naval service of the United States, having served therein during the Civil War. On or about the 6th day of February, 1873, he was duly appointed a member of the uniformed force of the New York fire department. In the month of July, 1898, relator, then being a fireman of the first grade, applied to respondent, the fire commissioner and head of the department, for promotion to the grade or rank of assistant foreman. Said application was considered by respondent, and relator was examined by the examining board of the fire department on or about June 3, 1899, and after such examination relator's application was forwarded by respondent to the municipal civil service commission. Thereupon relator underwent an examination in regard to fitness and merit for said position, including a medical examination made on or about March 27, 1900. On the 26th of July, 1900, in response to a requisition of the fire department calling for names of persons eligible for appointment as assistant foreman to fill 30 vacancies in the boroughs of Manhattan and the Bronx, the civil service commission certified a list of 50 names from the eligible list, at the head of which stood the name of relator as a veteran. Said list was received by the department on the same day, July 26th. On the 27th of July, 1900, relator was ordered to appear before the medical

officers of the department on July 30th to be examined "as to his fitness to continue longer in the service of the department." On the same day, July 27th, an order was made promoting to the position of assistant foreman 38 men from the eligible list reported by the civil service commission, said promotion to take effect August 1, 1900. Relator was not promoted, though at the head of the list, and on that day on the active list. Relator obtained permission to postpone his examination before the medical officers of the department from the 30th to the 31st of July. Nevertheless, on the 30th day of July, and the day before that examination, the medical officers certified as follows to the commissioner:

"July 30th, 1900.

"In pursuance of orders dated July 24th, we have had the following officers of the department appear before us for examination as to their fitness to continue doing duty, and beg to report as below:   *   *   *

"Fireman Lindsay Williamson, Eng. 46.

"Recommend retirement; defective vision."

This report bears the file marks of the department, and the recommendation of the fire chief, and the approval thereof, signed by the secretary. The order retiring the other men named in that report was made July 30th. On the next day relator appeared before the medical officers at about 1 p. m., and was examined, and they reported on that day that they found "him to be suffering from defective vision (R. V. 20/200, L. V. 20/100), being not one-tenth of the normal eyesight,"—a palpable mistake in calculation,—and certified that he was permanently disabled for the performance of the duties of his position, and such disability rendered him totally unfit for the performance of duties. The respondent was at that time, and from the 15th of the month had been, out of the city of New York, at the village of Saratoga Springs. Immediately after the examination the relator saw the fire chief, Croker, in his room, who told him that the order for his retirement had already been signed. That same evening he was personally served with the order of respondent, retiring him from the service upon a pension of $700, to take effect from and after August 1, 1900. The respondent testified that the order of retirement bore his signature, but that he did not put it on at Saratoga, or on July 31st, the day of its date; that he signed the paper in blank, with several others, just previous to his departure for Saratoga; and hence more than two weeks before its date, before it was made out, and before any of the proceedings to retire relator had been initiated.

There was some testimony by which it was sought to be established that the secretary of the board had communicated to respondent over the telephone at Saratoga the result of the medical officers' report, and had received telephonic instructions from him to issue the order of retirement. I am satisfied from the evidence that, assuming this testimony to be true, it occurred on July 30th, on the medical officers' certificate first made, because that included the two other men who were actually retired on that day, and hence the day before relator was actually examined, and, therefore, even assuming such a transaction to be valid, it certainly would have

no force or effect under such circumstances. But the objection lies deeper than such a mere question of dates.

Under section 790 of the charter, the commissioner acts in a judicial or quasi judicial capacity. He is charged with a discretionary power upon retirements. Section 519 of the consolidation act, the source of this provision in the charter, provided: "The board of fire commissioners shall have the power, by a unanimous vote, to retire from all service," etc. Construing a similar provision in regard to the police commissioners, the court of appeals said in People v. Martin, 145 N. Y. 253, 39 N. E. 960, that it conferred a discretionary power, and that discretion was a judicial one to be exercised reasonably and fairly. Section 790 says: "The fire commissioner shall have the power to retire from all service in the said fire department, or to relieve from service at fires," etc., "in every case the said fire commissioner is to determine the circumstances thereof;" and then follow a number of provisions allowing discretionary power in a number of different ways, as retiring from all service at half pay, relieving from active service, and putting on light work, etc. The report of the medical officers to him is advisory only. The recommendations of the fire chief are advisory only. "In every case the said fire commissioner is to determine the circumstances thereof."

In the case at bar, on his own testimony, respondent never saw the papers. At best, he took a telephonic statement of their contents from another man, and above his signature, signed in advance to a blank sheet of paper, was written an order which he never saw, and which might have contained any determination within the statute, and which was prepared before the medical examination was had and served, the same night. The evidence convinces the court that there was a settled and preconcerted determination by the officers of the department to avoid the effect of the veteran statutes and constitutional provisions, and to refuse to give to the relator the promotion he was entitled to. In my opinion, it has failed, because the respondent did not act legally. The relator has not been retired from the department. He was a member thereof on the 27th day of July, when the order for promotion was made, he was at the head of the list and entitled to be promoted, and he was still a member on the 1st of August, when that order took effect, because he had not been legally and properly retired, and the alleged order served on him on July 31st was null and void. A peremptory mandamus must issue "to right the wrong," and providing for his promotion as of August 1st, with costs, as in an action.

Ordered accordingly.